# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| SCOTT DILLINGHAM, )<br>)<br>        Plaintiff     )<br>)<br>v.      )<br>)<br>CAROLYN W. COLVIN,    )<br>Acting Commissioner of Social Security,  )<br>)<br>        Defendant     ) | No. 2:16-cv-00016-NT |

## REPORT AND RECOMMENDED DECISION[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge failed to address a particular diagnosis, adequately discussed the plaintiff's pain, wrongly considered agency reviews that did not consider a particular consultant's report, failed to consider properly the reports of lay observers, and failed to follow instructions from the Appeals Council. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2012, Finding 1, Record at 13; that, through the date last insured, he suffered from degenerative disc disease of the cervical spine, a

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on September 14, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

headache syndrome, and an affective disorder/depression, impairments that were severe but which, considered separately or in combination, did not meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings'), Findings 3-4, *id*. at 13-14; that, through the date last insured, he had the residual functional capacity ("RFC") to perform light work, except that he could balance, stoop, kneel, crouch, and climb ramps and stairs occasionally, had to avoid vibrating tools with both upper extremities and unprotected heights, was unable to crawl or climb ladders, ropes, or scaffolds, could reach in any direction only occasionally, could understand and remember simple instructions, could execute simple tasks, could interact with coworkers and supervisors and tolerate intermittent contact with the general public, and could adapt to occasional routine changes in the workplace, Finding 5, *id*. at 15; that, through the date last insured, he was unable to perform any past relevant work, Finding 6, *id.* at 22; that, considering his age (48 years old on the date last insured), education (at least high school), work experience, and RFC, there were jobs existing in significant numbers in the national economy before the date last insured that he could perform, Findings 7-10, *id*. at 23; and that he, therefore, had not been disabled from December 12, 2008, the alleged disability onset date, through the date last insured, Finding 11, *id*. at 24. The Appeals Council declined to review the decision, *id*. at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Occipital Neuralgia

The plaintiff contends that the administrative law judge committed reversible error when he found that the plaintiff suffered from a severe impairment of headache syndrome rather than occipital neuralgia.[2]  Plaintiff's Itemized Statement of Errors ("Itemized Statement") (ECF No. 11) at 2-7.  He points to several diagnoses of occipital neuralgia and recites descriptions of the diagnosis from various internet sources.  However, as the defendant points out, Defendant's Opposition to Plaintiff's Itemized Statement of Specific Errors ("Opposition") (ECF No. 15) at 3, the plaintiff does not explain how the recognition of occipital neuralgia as an impairment distinct from headache syndrome[3] would have altered the administrative law judge's ultimate conclusion.

---

[2] Occipital neuralgia is defined as post-traumatic neck syndrome, which in turn is defined as "a clinical complex of pain, tenderness, tight neck musculature, vasomotor instability, and ill-defined symptoms such as dizziness and blurred vision as the result of trauma to the neck."  *Stedman's Medical Dictionary* (27th ed. 2000) at 1206, 1764.

[3] *But see Lightford v. Barnhart*, Civil Action No. 06-256, 2006 WL 3857490, at *2 (E.D. Pa. Dec. 27, 2006) (diagnosis of headache syndrome *with* occipital neuralgia).  *Langley v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00071-DBH, 2012 WL 379937, at *7 (D. Me. Feb. 3, 2012), suggests that there is no error when one impairment title is "encapsulated" within another.  *See also Corcoran v. Astrue,* Civil No. SKG-08-913, 2009 WL 3100350, at *29 (D. Md. Sept. 22, 2009) (finding that occipital neuralgia, possible TMJ syndrome, and migraine headaches all "appear[] to be [] possible diagnos[e]s for the same complaint[.]"

3

This is an essential element of any appeal from a denial of an application for benefits that is based upon a failure to recognize or address a particular impairment. *See, e.g., LaBonte v. Astrue,* Civil No. 09-358-P-S, 2010 WL 2024895, at *3 (D. Me. May 18, 2010); *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010). The plaintiff cites no evidence of functional limitations stemming from the occipital neuralgia that would not be caused by headache syndrome.[4]

The plaintiff also argues that the administrative law judge failed to address the "significance" of the pain caused by his occipital neuralgia. Itemized Statement at 6-7. Again, he fails to explain how proper recognition of the severity of this pain would necessarily result in a different outcome on his application for benefits. In addition, the administrative law judge found that the plaintiff's "statements concerning the intensity, persistence and limiting effects of [his impairments] are not entirely credible[.]" Record at 16. Over the next six single-spaced pages of his opinion, the administrative law judge explained his reasons for this finding, including instances in which that testimony was contradicted by the medical evidence or the plaintiff's description of his activities of daily living. *Id*. at 16-22. Particularly where, as here, the plaintiff can only be relying on his own testimony to establish the functional limitations caused by his claimed pain, the administrative law judge's evaluation of the claimant's credibility is crucial. The plaintiff in this

---

[4] At oral argument, the plaintiff's attorney seemed to suggest that the diagnosis of occipital neuralgia, standing alone, is sufficient to require a finding of disability, because "very intense pain" is "singular to occipital neuralgia," an assertion for which no authority was cited, and because one of the plaintiff's treating physicians said that he was permanently disabled. The first assertion is contrary to Social Security case law, in which courts have upheld findings that occipital neuralgia was not, for the claimants involved, a severe impairment at all, *see, e.g., Wake v. Astrue*, No. 2:11cv35, 2012 WL 6851168, at *3 (W.D.N.C. Dec. 4, 2012); that, while a severe impairment, occipital neuralgia did not prevent a claimant from returning to her past relevant work, *Strong v. Colvin*, Civil Action No. 2:13cv751-CSC, 2014 WL 2440969, at *2, *10 (M.D. Ala. May 30, 2014); or that, while a severe impairment, occipital neuralgia did not prevent a claimant from performing jobs existing in substantial numbers in the national economy, *Lampkin v. Commissioner of Soc. Sec.,* Case No. 3:15CV511, 2016 WL 4248777, at *8, *10 (N.D. Ohio Aug. 11, 2016). The second assertion does not require a finding of disability, because the question of whether a claimant is disabled is reserved to the commissioner. *E.g., Frost v. Barnhart*, No. 03-215-P-H, 2004 WL 1529286, at *6 (D. Me. May 7, 2004).

case does not challenge the credibility finding, so I do not see how re-evaluation of the significance of his pain, which is only self-reported, could be required.[5]

### B. Dr. Pallatroni's Report

The plaintiff was referred to Henry F. Pallatroni, M.D., a neurosurgeon, to be evaluated for the surgical placement of a high cervical stimulator. Record at 813. Dr. Pallatroni agreed to perform the placement. *Id.* at 814. To the extent that the plaintiff complains that the administrative law judge failed to "specifically address" Dr. Pallatroni's diagnosis of occipital neuralgia, Itemized Statement at 5, the plaintiff's argument founders for the reasons previously discussed. The plaintiff does not attempt to distinguish Dr. Pallatroni's report in this regard.

The plaintiff finds it "significant" that the state-agency reviewing physicians "did not see Dr. Pallatroni's report." *Id*. at 7. Dr. Pallatroni's report is dated June 14, 2011. Record at 813. The reports of Homayoon Moghbeli, M.D., and Iver C. Nielson, M.D., the state-agency physicians, are dated March 16, 2011, and August 17, 2010, respectively. *Id*. at 130, 680. Dr. Moghbeli records diagnoses by other physicians of occipital neuralgia. *Id*. at 124, 129. The plaintiff contends, Itemized Statement at 8, that, because the state-agency physicians were "missing a key diagnosis by a neurosurgeon and explanation for it" and because their specialties were cardiology and surgery, possibly rendering them unable to understand the "rare and difficult diagnosis" of occipital neuralgia, the administrative law judge committed reversible error by giving their opinions "great weight." Record at 22.

---

[5] At oral argument, the plaintiff's attorney asserted that it was not necessary for the plaintiff to challenge the credibility finding because Dr. Hall, the medical expert who testified at the hearing that was held before the Appeals Council remanded the claim to the administrative law judge, stated clearly that the medical records contained significant evidence showing that the plaintiff's statements about the severity of his impairments were credible. The medical expert actually testified that the plaintiff "presents credible symptoms" and that the opinions of his treating physicians were "that he has credible pain, but without an identifiable medical or surgical diagnosis." Record at 45-46. However, if the plaintiff means to contend that the medical expert's testimony about credibility of a claimant must be accepted by an administrative law judge, that is incorrect.

5

The plaintiff again fails to identify any functional limitations resulting from occipital neuralgia that would change the outcome of the administrative law judge's decision. Dr. Pallatroni does not mention any functional limitations in his report. In order to find a basis for remand in the mere fact that the state-agency physicians did not see Dr. Pallatroni's report, on the showing made by the plaintiff, the court would have to engage in the very practice that is forbidden by long-standing Social Security law—drawing medical conclusions from raw medical evidence.

### C. Statements by Lay Witnesses

The plaintiff argues that the administrative law judge failed to analyze the statements of his former wife and his coworker[6] "properly." Itemized Statement at 10-11. He cites in support of his argument a passage from Social Security Ruling 06-03p that states that evidence from non-medical sources "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id*. at 10. This language, however, does not require an administrative law judge to credit any and all such evidence. Thus, it does not provide a basis for remand in this case.

The plaintiff next asserts that the Ruling requires an administrative law judge to "ensure that the discussion of the evidence in the . . . decision allows a . . . subsequent reviewer to follow the adjudicator's reasoning." *Id*. He does not specify how the decision in this case fails to meet that standard with respect to the statements of his former wife and his former coworker.

The full sentence from which the latter quotation is taken reads as follows:

> Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the

---

[6] The defendant contends that this individual "worked in the same facility Plaintiff did" but "was not a coworker." Opposition at 13. This distinction does not make a difference for purposes of my analysis.

> determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.

Social Security Ruling 06-03p ("SSR 06-03p"), reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2016) at 333.

After recounting the coworker's testimony, the administrative law judge said that he "has given some consideration to this lay testimony," but found it "not very illuminating, and the severity of symptoms reported appears to be based in large part on the claimant's subjective complaints of pain[,]" which the administrative law judge had found to be less than fully credible. Record at 19. The administrative law judge also recounted the written statement of the plaintiff's former wife, following which he stated that he had "given these statements little to no weight as they are from a non-medical source, and the degree of limitations cited is not substantiated in the evidence." *Id*. at 21.

The plaintiff faults the administrative law judge for "ignor[ing] the significance of [the coworker's] testimony[,]" because it was offered to show the extent of the plaintiff's decline over the period from December 2008 through March 2012, "not the subjective complaints of pain." Itemized Statement at 11. However, the argument concerning the plaintiff's "steady decline" is undercut by the administrative law judge's conclusion that the plaintiff's headaches had improved with treatment over time, including the plaintiff's statement to a health care provided just a few days prior to his date last incurred that his headaches were improved with his neurostimulator. Record at 20-21.

As the defendant points out, Opposition at 12-13, SSR 06-03p states that consistency with other record evidence is a relevant consideration in evaluating evidence from a source such as a spouse. SSR 06-03 at 333. Similarly, it was proper for the administrative law judge to consider the source of the coworker's observations, whether his testimony went to the plaintiff's physical

7

decline over time or merely to the fact that the plaintiff complained of pain, or to both. The administrative law judge's discussion of the lay evidence was sufficient. *See generally Beatty v. Colvin*, Civil No. 1:13-CV-217-DBH, 2014 WL 1779365, at *3-*4 (D. Me. Apr. 29, 2014); *Saucier v. Astrue*, No. 2:10-cv-111-DBH, 2011 WL 1158256, at *5 (D. Me. Mar. 28, 2011).

The plaintiff is not entitled to remand on this basis.

### D. Appeals Council Remand Order

The plaintiff's final challenge to the decision of the administrative law judge, briefly presented, is a claim that the administrative law judge failed to comply with the order of the Appeals Council remanding the case to him by failing to consider the period from December 2008 through July 2011 as a closed period for which benefits should be awarded. Itemized Statement at [12]. The only authority cited by the plaintiff in support of this argument is *Quimby v. Astrue*, No. 07-128-B-W, 2008 WL 660180 (D. Me. Mar. 5, 2008), but that case is inapposite. In *Quimby*, this court noted in *dicta* that the Eighth Circuit requires an administrative law judge to consider awarding benefits for a closed period, even when the attorney representing the claimant does not request it, but this court assumed *arguendo* that the First Circuit might adopt such a requirement as well, only to demonstrate that the outcome of the appeal in that case would not be different under those circumstances. *Id*. at *4-*5. The issue raised in the instant case, whether the Appeals Council ordered the administrative law judge to consider a closed period, is distinctly different from *Quimby*, where the plaintiff did not request it.

In any event, the order of the Appeals Council in this case cannot reasonably be construed to instruct the administrative law judge to consider awarding benefits for a closed period. The language quoted by the plaintiff, Itemized Statement at [12], "whether the claimant had a severe impairment for only a portion of the period at issue or whether the impairment was severe

throughout the period at issue[,]" Record at 163, refers only to the administrative law judge's task at Step 2. The entire bulleted paragraph in which this sentence fragment appears follows:

> The Administrative Law Judge found the claimant lacks a severe medically determinable impairment throughout the period at issue. However, the claimant's treatment history including facet injections (Exhibits 7F, pages 6 and 8), occipital nerve block injections (Exhibits 14F, page 4; 15F, page 4[;] 32F, page 10) and implantation of a neurostimulator (Exhibit 41F) over more than a twelve month period suggest the claimant may have a severe impairment. Based on the claimant's extensive treatment history, further evaluation of the severity of the claimant's headaches is needed considering the claimant's extensive treatment history. Additional evidence is needed for the period after implantation of the neurostimulator to determine whether the claimant had a severe impairment for only a portion of the period at issue or whether the impairment was severe throughout the period at issue.

*Id.*

Reading the paragraph as a whole, as well as the entire remand order, it is clear that the Appeals Council referred in this paragraph only to the severity of the plaintiff's medical impairment, a Step 2 issue, and not to an alternative, closed-period evaluation of the entire claim. The administrative law judge found that the plaintiff's headache syndrome was severe for the entire period at issue, so the answer to the question posed in the quoted passage from the remand order does not support the existence of only a closed period of eligibility for benefits.

The plaintiff is not entitled to remand on this basis.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum,*

9

*within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 19th day of December, 2016.

<u>/s/ John H. Rich III</u>
John H. Rich III
United States Magistrate Judge